# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2186 | **DATE** | 8/16/2000 |
| **CASE TITLE** | The Alcar Group, Inc. vs. Corporate Performance Systems, et | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' motion to dismiss (6-1) is granted in part and denied in part. Defendants' motion to dismiss the Lanham Act claims in counts II, III and IV is granted. I deny the motion to dismiss the state law claims in counts IV-VI. I grant, however, the motion to dismiss count V for failure to state a claim, but I deny the motion to dismiss count VI for failure to state a claim. I also deny the motion to dismiss Mr. Bassett from count I. Ruling set for 8/18/00 is vacated. Discovery is ordered closed on 2/28/01. Pretrial order is due by 3/30/01. Response to any motions in limine due by 4/18/01. Pretrial conference set for 4/27/01 at 3:00 p.m. Trial set for 5/14/01 at 9:30 a.m. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | AUG 17 2000 date docketed | |
| | Notified counsel by telephone. | | | 12 |
| | Docketing to mail notices. | | FILED FOR DOCKETING docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 8/16/2000 00 AUG 16 PM 6:42 date mailed notice | |
| MPJ | courtroom deputy's initials | | MPJ mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THE ALCAR GROUP, INC., a )
Delaware corporation, )
 )
       Plaintiff, )
 )
v. ) No. 00 C 2186
 )
CORPORATE PERFORMANCE SYSTEMS, )
LTD., a foreign corporation, )
and RICHARD BASSETT, an )
individual, )
 )
       Defendants. )

**DOCKETED**
**AUG 17 2000**

<u>MEMORANDUM OPINION AND ORDER</u>

    Can a United States corporation maintain a Lanham Act action against a foreign corporation for alleged trademark violations that occurred entirely abroad on no more showing than that these hurt the plaintiff's ability to conduct its business and license its products worldwide? I conclude that, without an account of how to set limits on the exercise of extraterritorial jurisdiction, this would extend my jurisdiction beyond the limits that the law allows. Accordingly I grant the defendants' motion to dismiss any claims alleging Lanham Act violations, and I grant other motions in part and deny them in part.

I.

The Alcar Group ("Alcar"), a Delaware corporation headquartered in Illinois, designs and markets software worldwide. In 1994, it licensed a British firm, Alcar U.K., which was renamed Corporate Performance Systems ("CPS") in 1997, and a British subject, Richard Bassett, to be exclusive distributors of Alcar software in Britain and South Africa, under an International Distributor Agreement (the "Agreement"). Things didn't pan out and Alcar terminated the Agreement in June 1997, cutting all relationships with the defendants in 1999. In the fall of 1997, in Frankfurt, Germany, CPS and Bassett sold Deutsche Bank, an existing Alcar client, some Alcar software under a contract with CPS, representing the arrangement to be with Alcar. There were problems with the product, and Deutsche Bank complained to Alcar in Illinois. Alcar felt obliged to fix the problem at considerable cost to save its goodwill. This lawsuit followed.

II.

I begin with the motion to dismiss the claims in counts II, III, and IV based on the Lanham Act, 15 U.S.C. §§ 1125(a)(1), 1114(1)(a), & 1125(c)(1) (the "Act"). On a motion to dismiss for lack of subject matter jurisdiction, I read a complaint liberally and accept as true the well-pleaded allegations of the complaint

and the inferences that may be reasonably drawn from those allegations. *Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999). The plaintiff has the obligation to establish jurisdiction by competent proof. *Commodity Trend Service, Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998). Alcar invokes *Steele v. Bulova Watch Co.*, 344 U.S. 280 (1952), arguing that the Supreme Court has read the Act to give federal courts jurisdiction to regulate trademark rights that affect American commerce. That case involved an American citizen who imported watch parts from the United States into Mexico, where he made phony "Bulova" watches, *id.* at 284-85. On those facts, the Supreme Court found that exercise of jurisdiction was proper, reasoning that "Congress in prescribing standards of conduct for American citizens may project the impact of its laws beyond the territorial boundaries of the United States." *Id.* at 282; The Court rejected the argument that there was no jurisdiction because "petitioner had committed no illegal acts within the United States." *Id.* at 281.

The present case, however, involves foreign citizens acting abroad, not American citizens. It is a "longstanding principle of American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial

jurisdiction of the United States.'" *United States v. Dawn*, 129 F.3d 878, 882 (7th Cir. 1997)(*citing EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991), *superceded by statute on other grounds; see also Restatement (Third) of Foreign Relations Law of the United States*, §§ 402-04 (1987). Federal statutes "presumptively lack extraterritorial reach." *Glass v. Kemper Corp.*, 133 F.3d 999, 1000 (7th Cir. 1998). Therefore, a plaintiff wishing me to exercise extraterritorial jurisdiction over foreign citizens for actions committed abroad must overcome that presumption.

According to Alcar, the holding of *Steele* is not limited to the proposition that Congress can regulate the conduct of United States citizens abroad under the Act, but is that Congress has power "'to regulate commerce within the control of Congress.'" *Steele*, 344 U.S. at 283 (*quoting* 15 U.S.C. § 1127. The Supreme Court noted that the Act defines "commerce" as "all commerce which may lawfully be regulated by Congress." *Id.* Even under the new and somewhat more restrictive Commerce Clause jurisprudence in effect today, Congress' powers in this regard are extensive. Congress may regulate "'those activities having a substantial relation to interstate commerce, . . . *i.e.*, those . . . . substantially affect[ing] interstate commerce.'" *United States v. Morrison*, 120

S.Ct. 1740, 1749 (2000)(internal citation omitted). As the Seventh Circuit has said, in this context, "[t]he Court upheld a broad concept of 'commerce.'" *John Walker and Sons, Ltd. v. Demert & Dougherty,* 821 F.2d 399, 408 (7th Cir. 1987) ("'[T]he Lanham Act revealed a congressional intent to exercise its power to the fullest.'"). The question is, how far is that? Does it extend to the activity of foreign citizens in a foreign country?

Alcar urges me to adopt a "balancing test" for the exercise of extraterritorial jurisdiction that was promulgated by the Fifth Circuit, under which I consider several factors, including "[1] the citizenship of the defendant, [2] the effect on United States commerce, and [3] the existence of a conflict with foreign law." *American Rice, Inc. v. Arkansas Rice Growers Coop. Ass'n,* 701 F.2d 408, 414 (5th Cir. 1983). Here the defendants are foreign citizens, and Alcar does not dispute the potential for conflict with foreign law in view of the existence of three valid British trademark registrations for the term "Alcar." It does note that no "actual" conflict is shown here, but with a potential conflict, this factor is no better than neutral. The question comes down to the effect on United States commerce.

Magistrate Judge Denlow of this court analyzed the question of

effect on American commerce using the seven-factor balancing test from *Timberlane Lumber Co. v. Bank of America National Trust & Savings Ass'n*, 549 F.2d 597 (9th Cir. 1976) (*Timberlane I*)(antitrust case), *superceded by* 15 U.S.C. § 6(a)(for antitrust purposes only). Under this test, I consider:

> [1] [T]he degree of conflict with foreign law or policy, [2] the nationality or allegiance of the parties and the locations or principal places of business of corporations, [3] the extent to which enforcement by either state can be expected to achieve compliance, [4] the relative significance of effects on the United States as compared with those elsewhere, [5] the extent to which there is explicit purpose to harm or affect American commerce, [6] the foreseeability of such effect, and [7] the relative importance to the violations charged of conduct within the United States as compared with conduct abroad.

*Thomas & Betts Corp v. Panduit Corp.*, 71 F. Supp.2d 838, 842 (N.D. Ill. 1999) (*citing Reebok Int'l, Ltd. v. Marnatech Enter., Inc.*, 970 F.2d 552, 554 (9th Cir. 1992)).

The first two elements of the *Timberlane* test are the same as the Fifth Circuit test. For the rest, Alcar fails to address any of the factors in the *Timberlane* test. It claims that the defendants' conduct affected commerce here because: Alcar is an American corporation doing business in this country; anything, including injury to its goodwill, that affects its ability to do business anywhere affects its ability to business here in the United States;

and the defendants' activities have affected Alcar's ability to do business in the United States with Deutsche Bank. In short, no company is an island, entire unto itself.

This "for whom the bell tolls" argument[1] is closest to [4] in the *Timberlane* test, but it leaves out the comparative dimension, *i.e.*, whether the effect is greater here or abroad. For the rest, there is silence. Alcar has waived the arguments for exercise of extraterritorial jurisdiction because, having indicated what I agree is the correct test, it did not even attempt to "establish jurisdiction by competent proof," *Commodity Trend Service*, 149 F.3d at 685, by showing that the elements of the test were satisfied.

Alternatively, insofar as Alcar did attempt to establish extraterritorial jurisdiction by showing an effect on United States commerce, it failed because its argument proves too much. In a global economy, the activities of foreigners abroad relating to an American multinational may indeed have some effect on American commerce. But I cannot ignore the language about the power of

---

[1] "No man is an island, entire of itself; every man is a piece of the continent, a part of the main; if a clod be washed away by the sea, Europe is the less, as well as if a promontory were, as well as if a manor of thy friends, or of thine own were; any man's death diminishes me, because I am involved in mankind; and therefore never send to know for whom the bell tolls, it tolls for thee." John Donne, Meditation No. 17, in *Devotions upon Emergent Occasions* 86-87 (A. Raspa ed. 1987)

-7-

Congress to regulate the conduct of American citizens in particular in *Steele* and in Seventh Circuit cases on extraterritorial jurisdiction under the Lanham Act, *see, e.g., Scotch Whisky Ass'n v. Barton Distilling Co.*, 489 F.2d 809, 812 (7th Cir. 1973). I need not discuss whether Congress may act under the commerce power to regulate the behavior of aliens acting abroad. Even if it can, there must be more to justify the application of our national law to foreigners abroad than what Alcar has presented. On Alcar's argument, Congress can write trademark legislation for the world if activities by any foreign citizen in any foreign country have any effect, however remote and tenuous, on United States commerce. I don't think so. All firms in the international economy are a "piece of the continent, a part of the main," but that is not a basis for federal jurisdiction. If Alcar has a trademark case, it is under British, German, or other EC law.

III.

The defendants ask that I also dismiss the related state law claims under counts IV-VI.[2] I have alienage jurisdiction over the

---

[2] These include dilution claims arising under the Illinois Anti-Dilution Act, 765 ILCS 1036/65 (count IV), the deceptive business practices claims arising under the Illinois Consumer fraud Act, 815 ILCS 505/1 *et seq.* (count V), and the claims under Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.* (count VI).

breach of contract claim in count I because Alcar is a citizen of Illinois and the defendants are aliens. I have supplemental jurisdiction over all other claims "so related to claims in the action that they form part of the same case." 28 U.S.C. § 1367(a). The question is whether the purely state law claims and the alienage claims "derive from a common nucleus of operative facts." *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995)(*United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966)). "A loose factual connection between the claims is generally sufficient." *Id.* The defendants argue that the contract claims in count I do not relate to the Agreement, but Count I states, among other things, that the defendants "have used Alcar's trade name and trademark, ALCAR, without authorization, in violation of . . . the Agreement." This is manifestly part of the same case.

However, the defendants' motion to dismiss Alcar's Illinois Consumer Fraud Act claims for failure to state a claim is better grounded. Addressing the applicability of that statute to a case involving out-of-state gas consumers suing an Illinois company in a matter involving out-of-state gas purchases, an Illinois court has recently said that the state "has no authority to regulate out-of-state transactions affecting non-Illinois citizens . . . ,

and has no interest in doing so. Further, while Illinois has an interest in seeing Illinois corporations do not engage in deceptive practices, its Consumer Fraud Act does not apply to consumers outside Illinois or business conducted outside Illinois." *Oliveira v. Amoco Oil Company*, 726 N.E.2d 51, 61 (Ill. App. Ct. 2000). If a Consumer Fraud Act case cannot be maintained against an Illinois-based defendant, it can even less be maintained against foreign citizens. Alcar makes no showing that the deceptive acts here affected Illinois consumers or business conducted in Illinois. Count V must be dismissed.

However, the defendants fail to offer any arguments that Alcar's claim under the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*, suffers from any similar limitation, and therefore have waived any such argument. *See Liu v. T&H Machine Co.*, 191 F.3d 790, 799 (7th Cir. 1999) (An argument "not raised in the district court . . . is waived.").

The defendants move that I dismiss Mr. Bassett from count I of the case if I dismissed counts II-VI. Since I do not dismiss all of those counts, I deny this motion as moot.

IV.

I GRANT the defendants' motion to dismiss the Lanham Act claims in counts II, III, and IV. I DENY the motion to dismiss the state law claims in counts IV-VI (actually the defendants say in counts II-VI, but counts II and III do not include any state law claims) for lack of supplemental jurisdiction. I GRANT, however, the motion to dismiss Count V for failure to state a claim, but I DENY the motion to dismiss Count VI for failure to state a claim. Finally, I DENY the motion to dismiss Mr. Bassett from count I.

ENTER ORDER:

*Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: August 16, 2000

Copies have been mailed to:

Floyd A. Mandell
Katten Muchin Zavis
525 W. Monroe Street
Chicago, IL  60661-3693

Attorney for Plaintiff

John T. Schriver
McDermott, Will & Emery
227 W. Monroe Street
Chicago, IL  60606-5096

Attorney for Defendants